IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER ALEXANDER JONES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01139-STA-egb |
| ) | |
| MIKE PARRIS, ) | |
| ) | |
| Respondent. ) | |

ORDER DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

In June 2015, Petitioner Christopher Alexander Jones, a Tennessee state prisoner, filed a *pro se* habeas corpus Petition under 28 U.S.C. § 2254 (the "Petition") (ECF No. 1). For the reasons that follow, the Petition is **DENIED**.

## BACKGROUND

**I.    State Proceedings**

The following background summary is drawn from the state court record (ECF No. 13), the decision in Jones's direct appeal, *State v. Jones*, 2012 Tenn. Crim. App. LEXIS 727, at *1–2 (Tenn. Crim. App. Sept. 14, 2012), and the decision in his appeal from denial of post-conviction relief. *Jones v. State*, 2015 WL 847433, at *1 (Tenn. Crim. App. Jan. 30, 2015), *perm. appeal denied* (Tenn. May 18, 2015).

On March 2, 2009, a grand jury of Gibson County, Tennessee, returned an indictment charging Petitioner with one count of first degree murder. Technical R. W2011-01990-CCA-R3-CD, at 4–5, Oct. 20, 2011, ECF No. 13-1. At his jury trial, several witnesses testified that Jones

and the victim were at the Kitty Kat Lounge in Humboldt, Tennessee, in the early morning hours of December 6, 2008. The two were dancing but began to argue over Petitioner's loss of a roll of money, which he accused the victim of taking. The victim, who was larger than Petitioner, pushed him in view of the other bar patrons. Jones eventually left the bar, and the "victim exited shortly thereafter." *Jones*, 2015 WL 847433, at *1. "Patrons outside of the nightclub saw the victim confront Petitioner and 'g[e]t in his face." *Id.* (alteration in original). Some of the patrons tried to restrain Jones, but he took off his shirt to free himself. When he did so, a handgun fell to the ground. After picking up the gun, Petitioner shot the victim in the chest. When she turned away from him, he shot her several times in the back. She died from the gunshot wounds. One of the State's witnesses testified that "she had never before seen Petitioner as upset as he was that night about the money." *Id.* "Another witness testified that Petitioner acted as if he was under the influence of 'more than alcohol because [she had] never seen anybody act like that . . . .'" *Id.* (alteration in original). One bar patron testified that he had seen Jones "drink most of a bottle of vodka while he was at the nightclub and that Petitioner was highly intoxicated." *Id.* Petitioner testified that, on December 5, 2008, he left work in the early afternoon and began drinking. *Id.* He also smoked marijuana, "shared a 'fifth' of alcohol" with friends as they travelled to the Kitty Kat Lounge, "drank a pint of vodka by himself," and "took five Xanax pills." *Id.* He further testified that he "purchased a quart of beer at the nightclub" and "did not remember anything that happened after that." *Id.*

The jury found Jones guilty of first degree murder, and the court sentenced him to life imprisonment with the possibility of parole. Technical R. W2011-01990-CCA-R3-CD, at 68–70, ECF No. 13-1. Petitioner took an unsuccessful direct appeal to the Tennessee Court of Criminal Appeals ("TCCA") challenging the sufficiency of the evidence. *Jones*, 2012 Tenn.

Crim. App. LEXIS 727, at *36. The Tennessee Supreme Court denied permission to appeal. Order, Feb. 19, 2013, ECF No. 13-13.

Petitioner subsequently filed a state *pro se* post-conviction petition. Technical R. W2014-00447-CCA-R3-PC, at 3–15, Apr. 28, 2014, ECF No. 13-14. The post-conviction court appointed counsel and held an evidentiary hearing. *Id.* at 16; Tr. of the Post-Conviction Relief Hr'g, Feb. 5, 2014, ECF No. 13-16 [hereinafter "Post-Conviction Hearing Tr."]. The court denied relief from the bench and in a written decision, Post-Conviction Hearing Tr. 27:7–21; Technical R. W2014-00447-CCA-R3-PC, at 20–21, ECF No. 13-14, and the TCCA affirmed. *Jones*, 2015 WL 847433, at *4. Permission to appeal to the Tennessee Supreme Court was denied. Order, May 18, 2015, ECF No. 13-21.

## II. Federal Habeas Petition

In June 2015, Jones filed the instant Petition, which presents the following claims:

**Claim 1:** Trial counsel provided ineffective assistance by "fail[ing] to provide or hire an expert psychiatric witness (or) other alcohol expert witness for the defense."[1] Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, at 6, 9, 11, June 3, 2015, ECF No. 1 [hereinafter "Pet."].

**Claim 2:** The trial "court improperly allowed a juror that was not a resident of the judicial district to sit on the jury in violation of [the] Constitution." *Id.* at 7.

## STANDARD OF LAW

## I. Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). Under section 2254, habeas relief is available only if the prisoner is

---

[1] The Court liberally construes grounds one, three, and four of the Petition as stating a single claim that defense counsel was ineffective by failing to call a psychiatric or alcohol expert, and that the TCCA's decision that he was not ineffective is contrary to controlling Supreme Court precedent, including *Hinton v. Alabama*, 571 U.S. 263 (2014).

3

"in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted when the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams*, 529 U.S. at 405. An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of subsection 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411). The Sixth Circuit construes subsection 2254(d)(2) in tandem with subsection 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and

4

do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under section 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *See id.* at 848. A petitioner procedurally defaults his claim when he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust his remedies because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) (citing *Ulster Cty. Court v. Allen*, 442 U.S. 140, 152–54 (1979)). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

5

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750 (quoting *Harris v. Reed*, 489 U.S. 255, 262 (1989)) (internal quotation marks omitted). The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014) (citing *House v. Bell*, 547 U.S. 518, 536 (2006)).

## II. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy." *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## DISCUSSION

Respondent Mike Parris filed the state-court record (ECF No. 13) and an Answer (ECF No. 14) to the Petition. He argues that Claim 1 is without merit and Claim 2 is procedurally

7

defaulted. Petitioner did not respond to the government's arguments, although he was allowed to do so. S*ee* Order Dir'g Clerk to Modify Docket & Dir'g Resp. to Respond, at 2, Oct. 24, 2016, ECF No. 5.

I.  **Claim 1**

In Claim 1, Petitioner asserts that trial counsel rendered ineffective assistance by "fail[ing] to provide or hire an expert psychiatric witness (or) other alcohol expert witness" to establish that he lacked the requisite mental capacity or intent to commit first degree murder.[2] Pet., at 6. He asserted this claim in his post-conviction petition, Technical R. W2014-00447-CCA-R3-PC, at 13, ECF No. 13-14, and unsuccessfully raised it on appeal from the denial of post-conviction relief. Brief of Appellant, at 2, Jul. 9, 2014, ECF No. 13-17; s*ee also Jones*, 2015 WL 847433, at *4. The exhausted claim is thus properly before this Court. *See* 28 U.S.C. § 2254(b)(1)(A).

Jones argues that the TCCA's rejection of the claim was contrary to clearly established Supreme Court precedent, including *Hinton*, 571 U.S. at 274. Pet., at 9, 11. The Court liberally construes the Petition as also asserting that the decision was based on an unreasonable determination of the facts and an unreasonable application of clearly established Supreme Court law. A review of the appellate court's decision and the records adduced at Jones's criminal trial and post-conviction hearing reveal that the claim is without merit.

A.  **The State Appellate Court's Decision**

---

[2]  Under Tennessee law, "the intoxication of a defendant does not justify the crime," but "its existence may negate a finding of specific intent." *Jones*, 2012 Tenn. Crim. App. LEXIS 727, at *16 (citing Tenn. Code Ann. § 39-11-503(a) (2006); *State v. Bullington,* 532 S.W.2d 556, 560 (Tenn. 1976)).

8

The TCCA reviewed the post-conviction record, which included, among other things, a copy of defense counsel's "motion for forensic evaluation; an order directing a forensic evaluation; a letter from Pathways Behavioral Health Services ("Pathways") stating that Petitioner was competent to stand trial and that, at the time of the offense, he was able to appreciate the nature and wrongfulness of his acts; as well as an *ex parte* motion for state funded expert services." *Jones*, 2015 WL 847433, at *2. During his post-conviction testimony, "Petitioner acknowledged that he had seen the motion and order," "testified that he was evaluated by a psychiatrist prior to his trial," and "acknowledged that his trial counsel discussed with him a letter which stated the conclusions of the forensic evaluator, and based on his conversations with counsel, he decided to go forward with his trial." *Id.*

One of Jones's two trial attorneys testified at the post-conviction hearing that he had discussed the letter from Pathways with his client and "determined that it was in Petitioner's best interest to present a defense of intoxication." *Id*. He conferred with Petitioner about his substantial intoxication at the time of the murder, and "spoke to several State's witnesses, who corroborated Petitioner's level of intoxication." *Id.* Upon questioning from the court, the attorney explained that "[w]e didn't think [an expert] was necessary because we thought we would be able to prove his intoxication from the factual witnesses." *Id.* at *3.

Addressing Petitioner's claim that his attorney should have called an expert witness, the TCCA expressly invoked *Strickland*'s two-part test. *See id.* The court determined that Petitioner had not established either deficient performance or prejudice:

> In a written order denying post-conviction relief, the trial court found that Petitioner's trial counsel "mad[e] a strategic, logical[,] and profession[al] decision as to whether to hire an expert, which was well within the standard of a criminal defense attorney" and that "no indication was presented at all that an[ ] expert would have changed the outcome of the trial[.]" The record does not preponderate against the trial court's findings. As noted above, Petitioner failed to

9

> present any evidence of what an expert witness would have stated. Defendant has failed to show that an expert, if called to testify, would have testified favorably in his defense.
>
> Because Petitioner has failed to establish prejudice, we need not address whether trial counsel's performance was deficient. Nevertheless, we agree with the post-conviction court that counsel's decision not to call an expert was not deficient. The decision to call a witness is a tactical or strategic decision. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."

*Id.* at *4 (citing *Strickland*, 466 U.S. at 669; *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011); *Black v. State*, 794 S.W.2d 552, 757–58 (Tenn. Crim. App. 1990)) (alterations in original). The appellate court's decision easily passes muster under the AEDPA's deferential review standards.

### B. The Decision Is Not "Contrary To" Controlling Supreme Court Law

As noted, the TCCA identified and applied *Strickland*'s two-part test and its standard for evaluating a defense attorney's strategic decisions. Because the court "appl[ied] the correct legal rule[s] from [Supreme Court] cases to the facts of [the] prisoner's case," its decision is not contrary to controlling law. *Williams*, 529 U.S. at 406. Petitioner nevertheless argues that the appellate court should have invoked and applied *Hinton*, 571 U.S. at 274. Pet., at 9, 11. But this argument is without merit.

In *Hinton*, the petitioner challenged his defense counsel's "failure to request additional funding in order to replace an expert he knew to be inadequate . . . ." 571 U.S. at 274. Although the attorney believed that he could not seek additional funding, "cursory" legal research would have revealed to him that funding was available. *Id.* Undertaking a "straightforward application" of *Strickland* and its progeny, the Supreme Court ruled that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance

under *Strickland*." *Id.* at 272, 274. The Court therefore concluded that "it was unreasonable for Hinton's lawyer to fail to seek additional funds to hire an expert where that failure was based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." *Id.* at 273. The case was remanded for a determination of whether the defendant had been prejudiced by his attorney's deficient performance. *Id.* at 276.

*Hinton* is inapposite to Claim 1. Petitioner has not identified a mistaken belief, whether on a point of law or fact, which he believes caused his attorney to decide not to hire and call a psychiatric or intoxication expert witness. Accordingly, the TCCA cannot to be faulted under AEDPA review for failing to discuss and apply *Hinton*.

The Court must therefore conclude that the TCCA's decision, which identified and applied the correct legal rules, is not contrary to clearly established Supreme Court law.

**C. The Decision Is Not Based on Unreasonable Factual Determinations or an Unreasonable Application of Law**

Petitioner has not specified which of the state court's factual findings he believes are unreasonable. He also has not lodged a specific challenge to the TCCA's legal analysis. Instead, he argues generally that the appellate court's conclusion that counsel was not ineffective in deciding not to call a psychiatric or intoxication expert to the stand was incorrect. Upon review of the record and the TCCA's reasoning, the Court concludes that the decision was not based on an unreasonable determination of the facts, nor was it the result of an unreasonable application of controlling law to the facts.

At the post-conviction hearing, counsel testified about the steps he took to investigate Petitioner's state of mind and intoxication at the time of the crime, and his thought process in deciding not to hire and call a psychiatric or intoxication expert. Post-Conviction Hearing Tr.

11

18:12–21:8. The post-conviction trial court implicitly found counsel's testimony to be credible. *Id.* at 27:7–21; Technical R. W2014-00447-CCA-R3-PC, at 21, ECF No. 13-14. That credibility determination, which the TCCA did not disturb, is entitled to deference by this Court in the absence of clear and convincing contrary evidence in the record. *See Fargo v. Phillips*, 58 F. App'x 603, 607 (6th Cir. 2003) (holding "state court's determination that counsel's testimony was more credible than the witnesses' testimony was not unreasonable" where there was "no clear and convincing evidence to justify a rejection of the trial court's credibility finding."). Jones has not pointed to any clear and convincing evidence to undermine the credibility finding.

Based on the facts to which counsel credibly testified, the state appellate court did not unreasonably conclude that his "decision not to call an expert was not deficient." *Jones*, 2015 WL 847433, at *4. As noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Counsel's testimony easily supports the conclusion that his decision not to call a psychiatric or intoxication expert was based on a reasonable investigation into Petitioner's state of mind at the time of the murder (including through a forensic evaluation), his level of intoxication, and the evidentiary options for establishing voluntary intoxication.

With regard to prejudice, the TCCA's determination that Petitioner had not submitted any evidence to establish what an expert would have said if called as a witness, is itself a finding of fact which Petitioner must overcome with clear and convincing proof. *See Kestner v. Lafler*, 2011 U.S. Dist. LEXIS 155360, at *46 (W.D. Mich. Dec. 29, 2011) ("The state court's conclusion that Petitioner had failed to provide facts supporting his

claim is itself a finding of fact, which is presumed to be correct under the AEDPA absent clear and convincing evidence to the contrary."), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 80129 (W.D. Mich. June 11, 2012). Petitioner has not pointed to any clear and convincing evidence that would undermine that finding, and the Court is unable to locate any such evidence in the post-conviction record.

The TCCA was therefore faced with a record which did not evince a "reasonable probability" *Strickland*, 466 U.S. at 694, that the outcome of Petitioner's trial would have been different had counsel called a psychiatric or intoxication expert to testify. The TCCA's determination that Jones was not prejudiced by the decision of counsel was therefore not objectively unreasonable. *See, e.g.*, *Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 712 (S.D. Ohio 2009) (holding that petitioner's failure to present evidence that an "expert[']s testimony would have benefitted" him was "fatal to any attempt to establish that 'but for counsel's alleged deficiencies,' the results of the proceedings would have been different"), *aff'd*, 699 F.3d 908 (6th Cir. 2012).[3]

For all of these reasons, Petitioner has not shown that the TCCA's decision fails AEDPA review. Claim 1 is therefore **DENIED**.

## II. Claim 2

In Claim 2, Petitioner asserts that the criminal trial court "improperly allowed a juror that was not a resident of the judicial district to sit on the jury in violation of [the] Constitution." Pet., at 7. Respondent argues that the claim is procedurally defaulted. The Court agrees.

---

[3] There appear to be three separate orders in the *Moreland* case with the same citation. The actual *Moreland* decision that the Court draws upon is the Report and Recommendation issued by Magistrate Judge Michael R. Merz on October 3, 2008. Magistrate Judge Merz then supplemented the Report and Recommendation on February 17, 2009. District Judge Thomas M. Rose adopted the complete Report and Recommendation on April 10, 2009.

Jones's defense counsel presented the claim in his written motion for a new trial. Technical R. W2011-01990-CCA-R3-CD, at 72, ECF No. 13-1. He withdrew the issue, however, at the hearing on the motion because his research showed that the juror lived in the district. Tr. of the Mot. for a New Trial Hr'g 5:21–6:4, July 5, 2011, ECF No. 13-7. Jones did not raise the issue on direct appeal. Brief of Def./Appellant Christopher Alexander Jones, at 9, Dec. 7, 2011, ECF No. 13-9. He reasserted the claim in his *pro se* post-conviction petition, Technical R. W2014-00447-CCA-R3-PC, at 8, 13, ECF No. 13-14, but did not raise the issue on appeal from the denial of post-conviction relief. Brief of Appellant, at 2, Jul. 9, 2014, ECF No. 13-17. The time for raising the issue to the state appellate court has passed.

Jones does not assert cause to excuse the procedural default, or allege that he has new reliable evidence of his actual innocence. The claim is therefore not properly before the Court. Accordingly, Claim 2 is **DISMISSED**.

For all of these reasons, the Petition is **DENIED**. Judgment shall be **ENTERED** for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)–(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural

grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[4]

## **CONCLUSION**

Because Petitioner has not shown that the TCCA's decision regarding Petitioner's first claim fails AEDPA review, and because Petitioner's second claim is procedurally defaulted, the Petition is hereby **DENIED**. The Clerk is **DIRECTED** to enter Judgment for Respondent. Furthermore, because reasonable jurists would not debate the correctness of the Court's decision to deny the Petition, the Court **DENIES** a COA. And for the same reason, the Court

---

[4] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

15

**CERTIFIES** that an appeal in this matter would not be taken in good faith and **DENIES** Petitioner leave to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            CHIEF UNITED STATES DISTRICT JUDGE

Date: August 22, 2018.